STATE of Wisconsin, Plaintiff-Appellant,

v.

James CHINAVARE, Defendant-Respondent.†

Court of Appeals

*No. 93–1542–CR. Submitted on briefs May 3, 1994.—Decided May 17, 1994.*

(Also reported in 518 N.W.2d 772.)

†Petition to review dismissed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Alan R. Kesner*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Jean J. Brown* of *Shneidman, Myers, Dowling & Blumenfield* of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

FINE, J.   James N. Chinavare was charged, as party to a crime, *see* § 939.05, STATS., with violating a temporary injunction issued to prevent abortion protestors from interfering with the business of various abortion clinics, including the Summit Women's Health Organization on North Water Street in downtown Milwaukee. The complaint was issued under the authority of § 785.03(1)(b), STATS., and sought the pen-

alties authorized by § 785.04(2)(a), STATS.[1] A complaint issued under § 785.03(1), STATS., "shall be processed under chs. 967 to 973." Section 785.03(1)(b). The trial court dismissed the complaint. The State appeals. We reverse.

## I.

On June 15, 1992, the circuit court in Milwaukee County issued a document entitled "temporary injunction order" in then-pending case number 92-CV-8195,

---

[1] Section 785.03(1), STATS., provides:

NONSUMMARY PROCEDURE. (a) *Remedial sanction.* A person aggrieved by a contempt of court may seek imposition of a remedial sanction for the contempt by filing a motion for that purpose in the proceeding to which the contempt is related. The court, after notice and hearing, may impose a remedial sanction authorized by this chapter.

(b) *Punitive sanction.* The district attorney of a county, the attorney general or a special prosecutor appointed by the court may seek the imposition of a punitive sanction by issuing a complaint charging a person with contempt of court and reciting the sanction sought to be imposed. The district attorney, attorney general or special prosecutor may issue the complaint on his or her own initiative or on the request of a party to an action or proceeding in a court or of the judge presiding in an action or proceeding. The complaint shall be processed under chs. 967 to 973. If the contempt alleged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial of the contempt unless the person charged consents to the judge presiding at the trial.

(c) *Joint hearing and trial.* The court may hold a hearing on a motion for a remedial sanction jointly with a trial on a complaint seeking a punitive sanction.

Section 785.04(2), STATS., provides, as material here:

PUNITIVE SANCTION. (a) *Nonsummary procedure.* A court, after a finding of contempt of court in a nonsummary procedure under s. 785.03 (1) (b), may impose for each separate contempt of court a fine of not more than $5,000 or imprisonment in the county jail for not more than one year or both.

*State of Wisconsin and City of Milwaukee v. Missionaries to the Preborn.* (Uppercasing in original omitted.) The order enjoined the "defendants and all persons in active concert with them receiving actual notice of this Temporary Injunction and all persons engaging in conduct similar to that alleged against defendants in plaintiffs' complaint and receiving actual notice of this Temporary Injunction" from "[t]respassing on, sitting in, blocking, impeding or obstructing access to, ingress into or egress from the following facilities, including the parking lots, parking lot entrances, driveways and driveway entrances, at which abortions are performed: . . . ." The list of facilities included the Summit Women's Health Organization.

On November 6, 1992, a special agent with the Wisconsin Department of Justice swore to a criminal complaint alleging that Chinavare violated the terms of the temporary injunction issued in case number 92-CV-8195. Specifically, the criminal complaint alleged that Chinavare was served with a copy of the temporary injunction, and that on October 10, 1992, he "directed others to block, impede and obstruct ingress to and egress from Summit Women's Health Organization . . . and to demonstrate within twenty-five feet of the entrance or exit of the clinic." As a factual basis for the complaint, the special agent alleged the following:

- Records of the City of Milwaukee police department indicated that Chinavare was named as a defendant in the injunction order;
- Records of the City of Milwaukee police department indicated that Chinavare was personally served with a copy of the injunction order on June 16, 1992, and again on June 27, 1992;

531

- That he, the special agent, interviewed Karl Rohlich, described by the special agent in the criminal complaint as "a citizen witness whom [the special agent] believes to be truthful and reliable";
- That Rohlich told the special agent that at approximately 6:15 a.m. on October 10, 1992, Rohlich saw and heard Chinavare instruct other persons who had gathered at a church parking lot in Wauwatosa to board a bus that, according to the complaint's recitation of what Rohlich told the special agent, "would stop near an abortion clinic on Water Street in Milwaukee," and that Chinavare instructed the persons that when the bus reached the clinic to " 'get off and do your thing' ";
- That Rohlich went to the Summit Women's Health Organization on North Water Street, and saw some of the persons he had previously seen at the Wauwatosa parking lot get off the bus, walk towards the clinic, duck under police barricades in front of the clinic, sit in front of the clinic's doors, and block persons trying to pass in or out through the doors;
- That Rohlich saw Chinavare across the street from the Summit Women's Health Organization holding a clipboard, talking into a walkie-talkie, and giving instructions to a person whom Rohlich described as an anti-abortion protestor;
- That eleven persons were arrested that morning for crossing police barricades at the Summit Women's Health Organization, and for blocking the clinic's entrance.

The record does not reveal whether those arrested at the Summit Women's Health Organization were subject to the June 15, 1992, injunction.

As noted, the trial court dismissed the complaint. In the course of its oral decision, the trial court ruled that it would strictly construe the complaint, and that the complaint did not allege that Chinavare had personally violated the provisions of the temporary injunction. Further, the trial court opined that the criminal complaint relied on "circumstantial evidence" in its effort to establish probable cause to believe that Chinavare was directing others to violate the injunction because "there is no direct indication in the complaint of [Chinavare] directly telling someone anything in terms of what particular actions they are to take at the location of the clinic."

## II.

█ A criminal complaint "is a written statement of the essential facts constituting the offense charged." Section 968.01(2), STATS. To be viable, a complaint must establish probable cause that a crime was committed by the defendant. *See* § 968.03(1), STATS. A complaint establishes probable cause if it sets forth facts sufficient to permit an impartial judicial officer " 'to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process.' " *State ex rel. Cullen v. Ceci*, 45 Wis. 2d 432, 442, 173 N.W.2d 175, 179 (1970) (citation omitted). The complaint "need not," however, "contain all the allegations of fact which if proved would be necessary to convict." *Ibid.*

A criminal complaint should not, as the trial court believed, be "strictly construed"; rather, a complaint is sufficient if the facts alleged "give rise to reasonable inferences which are sufficient to establish probable cause . . . not in a hypertechnical but in a common sense evaluation," *State ex rel. Evanow v. Seraphim*, 40 Wis. 2d 223, 226, 161 N.W.2d 369, 370 (1968) (footnote omitted). Stated another way, although a complaint must set forth "the essential facts constituting the offense charged," § 968.01(2), STATS., it need not contain an "encyclopedic listing of all evidentiary facts upon which the state intends to rely" at trial, *Evanow*, 40 Wis. 2d at 229, 161 N.W.2d at 372. Indeed, the facts alleged in the complaint need not "be sufficient to sustain a conviction" even if proved. *Cullen*, 45 Wis. 2d at 444, 173 N.W.2d at 180. When based on hearsay, there must be "enough underlying facts to permit the reasonable inference that the sources of information are probably truthful." *Evanow*, 40 Wis. 2d at 230, 161 N.W.2d at 372 (footnote omitted). Our review of the trial court's dismissal is *de novo. State v. Adams*, 152 Wis. 2d 68, 74, 447 N.W.2d 90, 92 (Ct. App. 1989).

As noted, Chinavare was charged with violating the June 15, 1992, injunction "as party to a crime." Section 939.05, STATS., the "party to a crime" statute, provides that a person may be convicted of an offense if he or she "[i]ntentionally aids and abets" its commission, § 939.05(2)(b), STATS., or "[i]s a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it," § 939.05(2)(c), STATS. In other words, criminal complicity, as with gravity, can operate at a distance. In the context of this case, a person can "block" an entrance either with his or her own body or by having another

person physically bar the way. We need not decide whether a violation of the court order is a "crime" as that term is used in § 939.05, however, even though a fine and incarceration are possible penalties, because we conclude that the complaint states probable cause to believe that Chinavare violated the injunction directly.[2]

One directly violates a court order by having others do the things prohibited by the order even if those others are not bound by the order. *Person v. Miller*, 854 F.2d 656, 661-662 (4th Cir. 1988), *cert. denied*, 489 U.S. 1011 (1989); *see Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990) ("The law does not permit the instigator of contemptuous conduct to absolve himself of contempt liability by leaving the physical performance of the forbidden conduct to others. As a result, those who have knowledge of a valid court order and abet others in violating it are subject to the court's contempt powers."); *see also Regal Knitwear Co. v. National Labor Relations Bd.*, 324 U.S. 9, 14 (1945) (one "may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding") (*dic-*

---

[2] Section 939.12, STATS., defines "crime" as "conduct which is prohibited by state law and punishable by fine or imprisonment or both. Conduct punishable only by a forfeiture is not a crime." A person charged as "party to a crime" is not immune from conviction if the evidence shows only that he or she committed the offense directly, rather than in concert with others. Section 939.05(1), (2)(a), STATS. ("Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime" if he "[d]irectly commits the crime.") (capitalization and section markers omitted).

535

*tum*) (validity of cease and desist order issued by NLRB affecting "successors and assigns" although not parties to proceeding). The criminal complaint here passes the muster of probable cause. It sufficiently alleges that a group of abortion protesters met in Wauwatosa, that Chinavare told protesters to take a bus to the clinic, to get off the bus when it arrived at the clinic, and to "do their thing." A common-sense reading of the complaint also permits the reasonable inference that Chinavare's actions across the street from the clinic were helping direct the activities of those directly blocking the entrance to the clinic. Although Chinavare contends that the injunction did not give him "fair notice" that he could not instruct others to do what the injunction prohibited him from doing directly, this argument contravenes the established principles recognized by *Regal Knitwear, Roe, Person*, and § 939.05, STATS.

The order dismissing the criminal complaint is reversed, and the matter is remanded to the trial court for further proceedings.

*By the Court.*—Order reversed and cause remanded.